No. 23,371.

THE STATE OF KANSAS, ex rel. W. J. WEBER, as County Attorney of Barton County, *Plaintiff*, v. G. S. YOUNKIN, as County Clerk of Barton County, and M. W. WATSON, as State Highway Engineer, *Defendants*.

### SYLLABUS BY THE COURT.

1. MANDAMUS—*County Clerk Not Compelled by Mandamus to Perform a Ministerial Duty to Give Effect to an Unlawful Act.* A county clerk will not be required by mandamus to perform a ministerial duty when its performance is necessary to give effect to an unlawful act which the board of county commissioners has undertaken, although the board has full responsibility therefor and the county clerk has none.

2. HIGHWAYS—*County Commissioners Constructing Improved Highway—Purchase of Road-building Material—Inequitable Distribution of Costs Thereof.* When a board of county commissioners, pursuant to statutory authority, undertakes to construct an improved highway, the board may lawfully purchase road-building machinery for that purpose, and charge the initial cost to the road project; but it does not follow that the large sum which the board might justifiably expend for such machinery for a proposed highway of twenty-nine miles can be charged against a road project of five miles of such highway when it develops that the remaining parts of the proposed highway must be abandoned because of initial irregularities.

3. SAME. An expenditure of a sum of money which might be justifiable to invest in road-building machinery to construct a proposed highway of twenty-nine miles may be altogether unreasonable in amount when only five and a fraction miles of such highway must carry the entire burden of such expense.

4. SAME—*Implied Powers Conferred on Public Officials.* When, by statute, official powers and duties are conferred or imposed upon a public officer or official board, the only implied powers possessed by such officer or board are those which are necessary for the effective exercise and discharge of the powers and duties expressly conferred and imposed.

5. SAME—*Duty and Discretion of Highway Engineer.* When there is no showing that the state highway engineer has abused his discretion in determining the estimate which he will allow to be charged as part of the cost of a road for road-building machinery, and no fallacy is shown in the calculations by which he determined such estimate, his official determination of the matter will not be controlled by mandamus.

6. SAME—*Plan for Distribution of Costs Unreasonable and Unlawful—Mandamus Refused.* Pursuant to petitions of resident landowners, the board of county commissioners of Barton county set about the construction of an improved highway of twenty-nine miles across the

The State, *ex rel.*, v. Younkin.

county. It was determined to create four benefit districts and complete the highway in four separate projects. The board found that the cost of building the highway by contract would be excessive, and it determined, as by law permitted, to build the highway itself. Pursuant thereto it purchased $168,000 worth of road-building machinery. Later the road projects were enjoined because of initial irregularities. The taxpayers particularly interested in the proposed road filed new petitions to built about five miles of it. The board of county commissioners set to work on that project, and as a temporary expedient authorized a bond issue for the total cost of the machinery designed for constructing the entire twenty-nine miles of highway originally contemplated. The state highway engineer declined to sanction the charging of all the cost of the road-building machinery against the five-mile road project, and the county clerk declined to sign and register such bond issue. *Held*, that mandamus will not issue to compel these officers to perform any official acts necessary to accomplish such purpose of the county board.

Original proceeding in mandamus. Opinion filed March 12, 1921. Writ denied.

*W. J. Weber*, county attorney, for the plaintiff; *F. Dumont Smith*, and *Eustace Smith*, both of Hutchinson, of counsel.

*Richard J. Hopkins*, attorney-general, *J. K. Rankin*, assistant attorney-general, *William Osmond*, *Elrick C. Cole*, and *T. B. Kelly*, all of Great Bend, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: The state asks for a writ of mandamus directing the county clerk of Barton county to perform certain clerical duties pertaining to an issue of road bonds authorized by the board of county commissioners. The state highway engineer is impleaded because of his official concern therewith and may have some official duties to perform in relation thereto.

It appears that in 1919 the board of county commissioners of Barton county undertook to build a hard-surface highway across Barton county from east to west through Ellinwood and Great Bend. Such was the main plan, but as the work was founded upon the initiative of separate groups of petitioners, necessitating the creation of separate benefit districts to be charged with distinct parts of the cost of the improvement, the work was undertaken as four distinct projects, "A," "B," "C" and "D," totaling twenty-nine miles—the latter project, "D,"

being° five and a fraction miles of the proposed highway, and extending from the east line of the county to the city of Ellinwood.

Owing to the seemingly high bids filed by road-building contractors, the board of county commissioners decided to purchase road-building machinery and construct the road itself. This the board had statutory authority to do. (Laws 1919, ch. 246.) Pursuant thereto, and having in contemplation the construction of a highway extending across the whole county, the board purchased road-building machinery and equipment to the amount of $168,000.

About this time the legality of the proceedings under which the county board were assuming to act was called in question in a taxpayers' suit, and the work was enjoined because the expense of the highway was in excess of the maximum cost specified in the petitions of the landowners which were the basis for the authority of the county board to construct the highway. (*Hines v. Barton County*, 106 Kan. 682, 189 Pac. 368.)

Following the judicial determination that the county board could not construct a road at $40,000 or $60,000 per mile or any other excessive price, while using as a basis therefor a taxpayers' petition for a road costing not more than $30,000 per mile, the resident landowners who were particularly interested in that part of the proposed highway designated as project "D" filed a new petition with the county board praying for the construction of the highway, without any specified limitation as to its cost. On this petition the county board set to work anew on the work of road-building, and as the work has progressed bonds to the amount of $190,000 have been issued. But owing to the abandonment of the other road projects, "A," "B" and "C," because of initial infirmities, the county board decided to charge the entire cost of the road-building machinery to renewed project "D"; and, consequently, even the large amount of bonds already issued has not raised sufficient money to buy all this equipment and to complete the construction of project "D." The board's intention was only to charge this great sum temporarily against project "D," and it intended to sell this road-building machinery after project "D" is completed, or to charge it at some properly reduced

value to any later road projects which may be undertaken by the county and credit project "D" with such sale price or reduced value. Accordingly the county board adopted a resolution:

"Now, therefore, be it resolved that the bonds of Barton County, bearing 5%, be issued to the amount of $168,000.00 or so much thereof as may be necessary to pay for the equipment being used on project 'D.' That when said project is finished the cash value of such equipment be ascertained and the equipment sold, unless it is to be used in some other road project, and the depreciation of the equipment together with the interest thereon shall be charged to and made part of the cost of project 'D.' Said bonds to be issued and sold at once."

The county clerk balks at this large bond issue against project "D" and refuses to sign and register the bonds and coupons. The state highway engineer, who must sanction the outlay, also declines to give his official approval that all this vast sum be charged against project "D." Hence this lawsuit.

So far as the county clerk is concerned, he has neither responsibility nor discretion in the matter. His functions in the matter of this bond issue are only clerical; and yet it has been held that a public officer will not be required by mandamus to perform an act which in itself is merely incidental and ministerial to that which other officials are unlawfully seeking to accomplish. Thus in *National Bank v. Heflebower*, 58 Kan. 792, 51 Pac. 225, the board of school fund commissioners, who are charged with the responsibility of managing and investing the state school funds, purchased some county bonds at a price somewhat but not greatly in excess of their market value, and drew orders on the state treasurer for the payment of the agreed price. The treasurer declined to register the warrants and pay them. This court declined to compel the treasurer to perform these merely ministerial duties. The court said:

"The treasurer cannot be compelled by mandamus to perform any act necessary to carry out this contract; not because he is vested with authority to supervise the action of the Board of School Fund Commissioners, but because the statute says that such a contract shall not be made as the evidence introduced on the trial shows this one to have been. We do not know upon what information as to the market value of the bonds the commissioners acted. There is nothing in the transaction indicating bad faith on their part or a purpose to disregard the law. Nor is the showing with reference to the value of the bonds such as would have warranted us in refusing the writ on the ground that the purchase is an improvident or undesirable one." (p. 795.)

Moreover, in this case, it will be observed that the state highway engineer, who is also impleaded, has an important discretionary duty to perform before the bonds can be issued. He has to approve the estimates before the indebtedness can be effectually and lawfully created. His honest judgment and official discretion cannot be controlled by mandamus. He contends that it is highly improper that the cost of all this road machinery be charged *in toto* against project "D." The highway engineer is willing to give his sanction to the charging of a portion of the cost of the road-building equipment to project "D," the sum of $42,000; and he has arrived at that estimate upon calculations which have commended themselves to his professional and official judgment.

It is altogether proper that a reasonable amount of the cost of the machinery should be charged against project "D"; but it seems likewise obvious that it would be unreasonable that the whole amount should be charged against it. The machinery was not purchased for the use alone of project "D." It was purchased for use in the proposed construction of 29 miles of road-making. An investment of $168,000 for machinery to construct 29 miles of road would only cost *pro rata* about $5,800 per mile. That might be and probably was a prudent and economical investment, having the construction of 29 miles of road in contemplation.

Nor is there any doubt that the county board could lawfully purchase suitable machinery for road-building, since it has power to build the road. While the powers of a public officer or board are those and those only which the law confers, yet when the law does confer a power or prescribe a duty to be performed or exercised by a public officer, the powers granted and duties prescribed carry with them by necessary implication such incidents of authority as are necessary for the effectual exercise of the powers conferred and duties imposed. In Throop on Public Officers, § 542, the correct rule is stated:

"The rule respecting such powers is, that in addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers." (See, also, *Comm'rs of Brown Co. v. Barnett*, 14 Kan. 627.)

It would not be denied that the county board would have power to buy shovels and wheelbarrows for its laborers on this road. Neither can it be said that the board could not buy modern machinery but was limited to shovels and wheelbarrows. Undoubtedly it could make a reasonable investment in modern machinery for this road project. But suppose the county board had purchased five times as many bricks or five times as many bags of cement as were necessary for project "D"; it would hardly be argued that the cost of all of the bricks and all the cement could be charged to that project.

The state highway engineer in the exercise of his discretion has determined that not more than $42,000, about $8,000 per mile, could reasonably be expended for road machinery for project "D." No fault is found with the engineer's estimate. We discern no fallacy in the method by which he arrived at that estimate. We think the engineer has taken the right attitude in this difficult situation. The plaintiff suggests that the whole cost of the machinery should be temporarily charged against project "D" and later charged at a proper figure to succeeding road projects in Barton county. If succeeding projects were actually impending, we are not prepared to say dogmatically that that method of handling the matter could not be followed—if the state or some complaining taxpayer did not interrupt it before it was accomplished—but mandamus would hardly issue to compel some public officer to perform an official service to give that method effect, for certainly that particular method of providing payment for the road-making machinery has not been prescribed by the legislature. But neither will we say that such a method of dealing with the matter by the county board would be interfered with by injunction. When the legislature confers power in general terms upon an official body, without prescribing the details for the exercise of that power, the courts will not be officious to interfere with the official body's discretionary methods of performing the public duty intended by the legislature in granting such powers. (*Fairchild v. City of Holton,* 101 Kan. 330, 333, 166 Pac. 503; *The State, ex rel., v. Travis,* ante, p. 257, 260, 195 Pac. 182.) But here, so far as the pleadings disclose, there is no other road project impending in Barton county.

The plaintiff suggests that the county might purchase the machinery and then sell it when the project is finished, charging the loss to the project with interest on the bonds issued for it. We think we have answered this proposition as far as it can now be answered. The county board could purchase the machinery for the use of the county if it had the funds in sight to do so; or it could purchase a reasonable amount of machinery for the use of some particular road project and charge that amount to that project, giving it credit, of course, for the salvage value of the machinery when that project was completed; and if it had a number of road projects on hand at a time, and these were being prosecuted in compliance with the requisite legal preliminaries (as projects "A," "B" and "C" were not), the county board, with the approval of the state highway engineer, could apportion the cost of the requisite machinery to all the pending projects, and credit each project with the salvage value proportionately when the projects were completed and the machinery disposed of.

The court is not unmindful of the present embarrasing situation in which Barton county is placed. The court will gladly consider any proposed solution of this difficult situation when properly submitted for our consideration, but we cannot perform the functions of both court and counsel. Unless included in those already issued, there appears to be no reason why such amount of bonds as the engineer's estimate will allow, $42,000, should not be issued if that will help the county's dilemma. But the writ prayed for cannot be issued.

Writ denied.