FRED A. RISSER, President Wisconsin State Senate
As Chairman of the Senate Committee on Organization, you request my opinion on two questions which relate to the power and duty of a district vocational, technical, and adult education (VTAE) board to charge tuition and fees.
Your first question is:
 Is Section 38.24 (3)(b) Wisconsin Statutes making the District Board of a student's district of residence liable for payment of non-resident fees when attending another district VTAE school unconstitutional as a denial of equal protection?
Under sec. 38.24 (1), Stats., each VTAE student is charged a uniform fee based on the type of program or course in which they are enrolled. These fees are set by the state board for students enrolled in liberal arts college transfer programs, post-secondary and vocational-adult programs and programs for inmates. A materials' fee is also set. The state VTAE board also establishes nonresident fees which apply generally to nonresidents of a particular VTAE district. Each VTAE district program is supported by local property tax levies. This local funding feature makes nonresident tuition for Wisconsin residents from outside the district a desirable policy. This nonresident tuition is set by sec. 38.24 (3)(a)1., Stats., at "37.5% of the statewide property tax funded cost per full-time equivalent student for operating these programs." Normally, the student pays this tuition.
Section 38.24 (3)(b), Stats., provides an exception to student payment as follows: *Page 140 
 The district board of a student's district of residence is liable for the nonresident fee under par. (a) 1 only if the program in which the student enrolled is not offered by the district of residence and the district board of attendance files notice of enrollment under s. 38.22 (2). In the case of any disagreement between district boards as to liability under this paragraph, the state board shall make the final determination.
I am of the opinion that there is no denial of equal protection.
I do not believe my conclusion is contrary to Buse v. Smith,74 Wis.2d 550, 579, 247 N.W.2d 141 (1976). There, the court struck as violative of the uniformity clause, Wis. Const. art. VIII, sec. 1, a requirement that certain elementary and secondary educational districts deliver tax monies for redelivery to other such districts, although the court upheld this plan against an equal protection challenge. In respect to the uniformity clause, the court found the plan offensive because one school district was compelled to levy and collect a tax "for the direct benefit of other school districts." 74 Wis.2d at 579.
Buse is inapplicable because here the taxpayers of the nonoffering district receive benefits, not only because their own residents enjoy the availability of training but also because taxes are saved by avoiding unnecessary duplication of programs. Acting under sec. 38.001, Stats., the VTAE state board determines whether local districts may offer certain programs. The obvious purpose is to reduce the overall tax burden by discouraging unnecessary duplication of services between vocational school districts. This case, therefore, is unlike the situation in Buse
where the plan violated the rule that "the purpose of the tax must be one which pertains to the public purpose of the district within which the tax is to be levied and raised." Id. at 577. SeeSigma Tau Gamma Fraternity House v. Menomonie, 93 Wis.2d 392,413, 288 N.W.2d 85 (1980).
The situation you raise is far closer to the issues the court treated in Manitowoc v. Manitowoc Rapids, 231 Wis. 94,285 N.W. 403 (1939), and West Milwaukee v. Area Bd. Vocational, T. A.Ed., 51 Wis.2d 356, 187 N.W.2d 387 (1971). appeal dismissed,404 U.S. 981 (1971). In Manitowoc the court upheld over equal protection objections a statutory requirement that a nonoffering vocational district pay the tuition charged in the nonresident district. The court *Page 141 
noted that all persons within the age limits were equally entitled to take advantage of the facilities. 231 Wis. at 100.
The court in Manitowoc also noted that the resident districts had the choice whether to offer the instruction. Id. I do not believe that fact, however, was necessarily dispositive in the court's thinking. The court's later decision in West Milwaukee
supports this inference. There, the court upheld the state's method of financing vocational education in part through area boards. Relying on an earlier decision, the court in part reasoned:
 The court noted that the statute in issue was enacted "as a part of the general policy to establish an efficient state highway system, and must be interpreted in the light of such legislative purpose." Hence the court recognized that the bridge was a part of a state
highway system, just as appellants contend a state
vocational system is here involved.
51 Wis.2d at 379 (emphasis the court's).
In evaluating the reasonableness of legislative classifications, then, it is necessary to look first to the overall, state legislative objective. That objective includes avoidance of undue duplication of vocational instruction by foreclosing some districts from providing certain instruction. It is rational to require these nonoffering districts to pay the tuition costs of its residents who take courses in other districts. This plan simply requires the taxpayers to fulfill their responsibility for vocational education either by providing the instruction or, if that method is denied in the interest of avoiding costly duplication, by paying the tuition costs of another district.
Your second question is:
 Can VTAE districts legally enter into agreements with other VTAE districts to waive the nonresident tuition requirement provided in sec. 38.24 (3)(b), Stats., which do not involve vocational-adult courses?
In my opinion the answer is no.
Section 38.24 (3)(c), Stats., provides that district boards may enter interdistrict contractual agreements to waive "nonresident tuition charges to Wisconsin residents in vocational-adult courses." *Page 142 
There is no similar provision permitting agreements to waive for other than vocational-adult courses. It is a rule of statutory construction that the express mention of one item impliedly excludes another. Appleton v. ILHR Department,67 Wis.2d 162, 172-73, 226 N.W.2d 497 (1975). Having expressly authorized waivers in vocational-adult courses, it follows by implication that there is no authority for waivers in other situations.
Moreover, agencies created by the Legislature have only such powers as expressly are granted to them or necessarily are implied, and any power must be found within the four corners of the statutes under which they proceed. State ex rel. Farrell v.Schubert, 52 Wis.2d 351, 357, 190 N.W.2d 529 (1971). There being no express provision for waiver except for vocational-adult courses, there is no authority for waivers in other situations.
This result is consistent with sec. 66.30 (2), Stats., which provides that municipalities may contract with each other "for the receipt or furnishing of services." Each municipality, however, can act only "to the extent of its lawful powers." Id. As noted above, the Legislature has taken in hand the question of waiver, has limited it to vocational-adult education, and has not otherwise empowered waivers in additional areas.
Similarly, it follows that the power under sec. 38.24 (3)(c), Stats., to contract with other district boards for instructional services cannot imply the power to contract for the services at any price. The Legislature itself has limited the circumstances in which tuition costs can be waived.
In reliance upon 31 Op. Att'y Gen. 155 (1942), it has been suggested that the power of the district boards to charge tuition is discretionary and that, therefore, the power to contract away the nonresident tuition requirements is implied from the discretionary power. 31 Op. Att'y Gen. 155 (1942) discusses an earlier statute relating to charging nonresident tuition. Section 41.19, Stats. (1941), provided that the local VTAE board "is authorized to charge tuition for nonresident pupils." The opinion concluded that the term "is authorized" is permissive rather than mandatory. In contrast to the statute then in effect, however, sec. 38.24 (3)(a), Stats., now provides that the VTAE state board "shall establish" nonresident tuition fees which "shall be the liability of the student," except as provided in sec. *Page 143 38.24 (3)(c), Stats. Thus, the language under the current statute is mandatory rather than permissive.
BCL:CDH